**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-CIV-62488-RAR**

**MARGUERITE T. MARTIN**,

    Plaintiff,

v.

**TELEPERFORMANCE**, **INC.**,

    Defendant.

_____/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**THIS CAUSE** comes before the Court on Defendant TPUSA, Inc.'s[1] Motion for Summary Judgment ("Defendant's Motion") [ECF No. 69] and *pro se* Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 70], filed on August 27, 2019. Having reviewed the parties' submissions, the record, and being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 69] is **GRANTED** and Plaintiff's Motion [ECF No. 70] is **DENIED**, as set forth herein.[2]

**BACKGROUND**

Plaintiff was employed by Defendant for approximately four months as a customer service representative at a call center in Fort Lauderdale, Florida. *See* Defendant's Statement of Material

---

[1] Although Plaintiff's Amended Complaint [ECF No. 9] brings a cause of action against Teleperformance, Inc., Plaintiff's former employer—and the legal entity at issue—is TPUSA, Inc. *See* Certificate of Interested Parties [ECF No. 42]. Accordingly, all references to Defendant in this case are to TPUSA, Inc.

[2] As a perfunctory matter, the Court notes that Plaintiff's Motion for Summary Judgment [ECF No. 70], her Response to Defendant's Motion for Summary Judgment [ECF No. 73], and her Supplement to her Motion for Summary Judgment [ECF No. 83] all fail to comply with Federal Rule of Civil Procedure 56 and Local Rule 56.1. Plaintiff neither admits nor denies Defendant's Statement of Material Facts and her own Statement of Material Facts contains extensive paragraphs that are difficult to parse through. Nonetheless, given the relaxed pleading standard for *pro se* litigants— and the Court's preference to resolve disputes on the merits—the Court will construe Plaintiff's pleadings liberally to resolve the parties' core disputes. *See Abele v. Tolbert*, 130 F. App'x 342, 343 (11th Cir. 2005)

Facts ("Def. SOMF") [ECF No. 69 at 2-7] ¶ 1; Plaintiff's Statement of Material Facts ("Pl. SOMF") [ECF No. 83-1 at 1-2] ¶ 2. During her onboarding process, Plaintiff completed a voluntary questionnaire in which she expressly noted that she did not have "a mental or physical impairment that substantially limit[ed] one or more [of her] major life activities…". *See* Voluntary Self-Identification Form for Persons with Disabilities and Covered Veterans [ECF No. 72-2 at 16-17]. Notwithstanding the same, on various occasions Plaintiff informed her customer service coworkers—but not her supervisor— that she suffered from anemia. *See* Marguerite Martin Dep. [ECF No. 72-1] at 77:15-78:12.

On January 4, 2018, Plaintiff was scheduled to work from 9:00 a.m. to 6:00 p.m. Def. SOMF ¶ 12. Plaintiff arrived at work to find herself in a security line with thirty to forty coworkers ahead of her. Martin Dep. 108:15-16. According to Plaintiff, while she was standing outside the line, she began to feel cold because the weather was approximately 60-70 degrees that morning. Pl. SOMF ¶ 6. After waiting a few minutes outside, Plaintiff bypassed the line and sought to proceed through security. Def. SOMF ¶ 13. The security guard at the entryway, Sharill Thompson, directed Plaintiff to return to the end of the line, but Plaintiff refused to do so; instead Plaintiff placed her bag on the security table and walked through the metal detector. Def. SOMF ¶ 14; Pl. SOMF ¶ 6.

Plaintiff alleges that after she walked through security, she believed her bag had been checked and thus proceeded to her workstation. Pl. SOMF ¶ 6. By contrast, Defendant contends that Plaintiff did not allow her bag to be searched, but rather "rushed through the metal detector and reached back behind her to grab her belongings before security officers could complete the search." Def. SOMF ¶ 15. Once inside the premises, Plaintiff did not request or otherwise seek medical treatment. Martin Dep. 134:11-24.

Approximately ten minutes later, a security officer approached Plaintiff and told her she needed to have her bag rechecked. *Id.* at 137:9-13. While being escorted back to the front of the building to have her bag rechecked, Plaintiff never mentioned her anemia or any medical condition. *Id.* at 141:12-16. Plaintiff's bag was rechecked and the security guard on duty prepared an incident report [ECF No. 72-2] at 60, detailing the alleged security breach on the premises—namely that Plaintiff had entered the building without her bag being checked. The report was submitted to Kingsley Michel, the Security Coordinator. Def. SOMF ¶ 18.

After reviewing the incident report and video footage of Plaintiff's entrance that morning, Dennis Morgan, the Site Manager/Director, Matthew Waring, the Contact Center Manager, and Jose Mazorra, the Human Resources Manager, decided to terminate Plaintiff. Def. SOMF ¶ 19. Before Plaintiff was terminated, none of the individuals involved in the termination decision knew Plaintiff had ever been diagnosed with anemia. *See* Affidavit of Dennis Morgan [ECF No. 71-3] ¶ 5; Affidavit of Jose Mazorra [ECF No. 71-1] ¶ 6; Affidavit of Matthew Waring [ECF No. 71-5] ¶ 7. Present at the termination meeting were Plaintiff, Daryl Welch, the Assistant Contact Center Manager, two security officers, and Plaintiff's direct supervisor, Frederick Grandison. Def. SOMF ¶ 22. At the meeting, Mr. Welch told Plaintiff that she was being terminated for a security breach. Martin Dep. 150:17-151:4. After she was terminated, Plaintiff told those present at the meeting that she was anemic and that the alleged security breach was related to her anemia because she could not withstand cold temperatures. *Id.* at 151:1-16; *see* Affidavit of Daryl Welch [ECF No. 71-6] ¶¶ 9-11.

On October 17, 2018, Plaintiff filed suit against Defendant alleging that she was discriminated against because of her anemia [ECF No. 1]. Two days later, the undersigned's predecessor dismissed Plaintiff's Compliant *sua sponte* for failure to state a plausible claim for relief [ECF No. 7]. On October 25, 2018, Plaintiff filed an Amended Complaint [ECF No. 9]. On

April 8, 2019, Plaintiff filed a Motion for Summary Judgment [ECF No. 23], which the Court denied for failure to set forth a sufficient legal basis and for failure to comply with the Federal Rules of Civil Procedure and the Local Rules [ECF No. 27].  On April 22, 2019, Plaintiff renewed her Motion for Summary Judgment [ECF No. 30], which the Court, again, denied for failure to comply with the Rules [ECF No. 45].

On May 21, 2019, the Court held a case management conference where Plaintiff clarified the nature of her claim in response to the Court's concern that her Amended Complaint appeared to comingle an alleged violation under the Americans with Disabilities Act ("ADA"),  42 U.S.C. §§ 12181, *et seq.*, with civil rights violations by government officials based upon either *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or 42 U.S.C. § 1983 (2018) [ECF No. 48].  At the hearing, Plaintiff made clear that her Amended Complaint consisted of a one-count allegation of discrimination pursuant to the ADA.

On August 27, 2019, the parties filed the instant Motions for Summary Judgment [ECF Nos. 69, 70].  After reviewing Plaintiff's Motion for Summary Judgment [ECF No. 70] and her Response to Defendant's Motion for Summary Judgment [ECF No. 73], the Court entered an Order instructing Plaintiff on the standard for summary judgment and affording Plaintiff the opportunity to supplement both her Motion for Summary Judgment and her Response to Defendant's Motion for Summary Judgment [ECF No. 82].[3]  Plaintiff filed a combined Supplemental Response [ECF No. 84] on November 25, 2019.

## **LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to

---

[3] Plaintiff's Motion for Summary Judgment totals a single paragraph that includes no statement of material facts, citations to the record, or case law; Plaintiff's Response to Defendant's Motion for Summary Judgment is comprised of two sentences that ask the Court to review almost a dozen record entries. Plaintiff's Supplement, while brief, does include a Statement of Material Facts and some analysis with corresponding citations.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has shouldered its initial burden, the burden shifts to the non-moving party to "'set forth specific facts showing that there is a genuine issue for trial,' not just to 'rest upon the mere allegations or denials of the adverse party's pleading.'" *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (quoting *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotations and citations omitted). Thus, a court

must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

## ANALYSIS

An employer may not discriminate against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) she is disabled; (2) she was a qualified individual at the relevant time; and (3) she was discriminated against because of her disability. *See Reed v. Heil Co.,* 206 F. 3d 1055, 1061 (11th Cir. 2000). Here, because Plaintiff cannot meet the first prong of her *prima facie* case—that she has a disability as defined by the ADA—her claim fails.

The ADA defines "disability" to mean: (a) a physical or mental impairment that substantially limits one or more major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Plaintiff contends that Defendant wrongfully terminated her because of her anemia. In support of her argument that she is disabled, Plaintiff points to a 2017 medical record, which notes that Plaintiff is anemic. *See* Quest Medical Record [ECF No. 83-1]. At her deposition, Plaintiff clarified that in 2015 she was diagnosed with anemia and prescribed over-the-counter iron supplements to treat the same. *See* Martin Dep. 66:7-67:25. According to Plaintiff, she sought treatment for anemia only twice in her life—the most recent time was in 2017, almost one year prior to her termination. *Id.* at 73:8-15.

Although it is undisputed that Plaintiff suffers from anemia, the mere presence of an impairment is not, by itself, sufficient to constitute a disability under the ADA. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1327 (11th Cir. 1998). Rather, Plaintiff must demonstrate

that her impairment substantially limits one or more of her major life activities. Plaintiff's Motion for Summary Judgment, her Response to Defendant's Motion for Summary Judgment, and her Supplement do not address this issue at all. Instead, Plaintiff's argument begins and ends with her diagnosis of anemia. *See* Pl. SMOF ¶ 5 ("[T]he Americans with Disabilities Act was violated due to an anemic symptom of the cold weather on 1-9-18."). While the Court accepts that Plaintiff has anemia, "merely proving the existence of a physical impairment, without addressing any limitation on major life activities, is not sufficient to prove disability under the Act." *Standard*, 161 F.3d 1327. Here, Plaintiff has presented no evidence that Plaintiff's medical condition "substantially limits one or more [of her] major life activities." Indeed, at her deposition, Plaintiff stated that her anemia did not impact her ability to perform her role as a customer service representative in any way, and there is no record evidence suggesting Plaintiff's other major life activities are impacted in any way by her anemia. Martin Dep. 76:19-22.

Similarly, Plaintiff does not argue or point to any evidence that suggests she had a record of an impairment that substantially limits one or more life activities. Because Plaintiff has failed to demonstrate that she has an impairment that substantially limits her major life activities, Plaintiff cannot establish that she has a record of such an impairment. *See Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999) (noting that "the record-of-impairment standard is satisfied only if she actually suffered a physical impairment that substantially limited one or more of her major life activities.").

Finally, Plaintiff does not argue that Defendant regarded her as having a qualifying impairment. In fact, Plaintiff agrees that the individuals who fired her—Dennis Morgan, Matthew Waring, and Jose Mazorra—did not learn of Plaintiff's anemia until *after* she had been terminated. It was only *afte*r Plaintiff was terminated that she offered her diagnosis as a justification for bypassing the security line. Martin Dep. 151:1-16. Plaintiff argues that she should not have been

fired once Defendant learned that Plaintiff suffered from anemia and thus required quick access to the building. Pl. SMOF ¶ 5. But whether or not Plaintiff was justified in bypassing the line on the date of her termination is of no moment. At this juncture, the Court need only determine whether Plaintiff has advanced sufficient evidence for a reasonable jury to conclude that she is disabled within the meaning of the ADA. Here, Plaintiff has not advanced any evidence from which the Court could find that Defendant regarded her as having an impairment that substantially limited her major life activities.

In sum, Plaintiff cannot demonstrate that she has a disability within the meaning of the ADA. For this reason, no reasonable jury could find that Plaintiff was wrongfully terminated in violation of the ADA.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [ECF No. 69] is **GRANTED** and Plaintiff's Motion for Summary Judgment [ECF No. 70] is **DENIED**. Final judgment shall be entered by separate order.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 28th day of January, 2020.

_____
**RODOLFO RUIZ**
**UNITED STATES DISTRICT JUDGE**